UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT and ANDREW B. )
ROSENTHAL, in their capacity )
as trustees of the WATERVILLE )
SHOPPING TRUST )
)
    Plaintiffs, )
)
            v. )   1:17-cv-00104-JDL
)
J.C. PENNEY CORPORATION, )
INC., )
)
    Defendant. )

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Robert and Andrew B. Rosenthal, in their capacity as trustees of the Waterville Shopping Trust ("WST"), have filed suit against J.C. Penney Corporation, Inc., seeking declaratory and injunctive relief with respect to a commercial lease between WST and J.C. Penney. ECF No. 10-2. J.C. Penney moves to dismiss the Complaint. ECF No. 11. For the reasons that follow, I grant the motion.

### I.    FACTUAL BACKGROUND

The following account is based on the factual allegations in the Plaintiffs' Complaint. WST and J.C. Penney entered into a commercial lease agreement in 1983 under which J.C. Penney leases retail space in a shopping center owned by WST in Waterville, Maine. The lease had a 15-year initial term, but included five options under which J.C. Penney could extend the lease term for five years each. J.C. Penney

has exercised four of these options, and is expected to also exercise the fifth, which will extend the lease to 2024.

In 2015, WST was presented with an opportunity to construct a new set of buildings within the shopping center grounds, which would house a restaurant and a retail store. WST expects this opportunity to be economically beneficial to it, J.C. Penney and the shopping center's other tenants, and the city of Waterville.

J.C. Penney's lease contains a clause that requires WST to obtain J.C. Penney's approval before constructing any new building or structure within the shopping center. The lease states:

> Without the prior approval of Tenant there shall not be constructed within any part of the Entire Premises (1) any facilities for the parking of motor vehicles other than at ground level in the locations shown therefor on Exhibit B hereto; (2) any building or structure except within the building areas shown on said Exhibit B; or (3) any improvements, or any replacements of, or alterations or additions to, existing improvements which do not conform in general exterior architectural treatment (including the appearance of construction material used) to the other portions of the Shopping Center or, in the case of the replacement of an improvement, to the improvement which is being replaced.

ECF No. 4-1 at 65. WST sought J.C. Penney's approval, but J.C. Penney refused to consent to the construction. J.C. Penney did, however, offer to give its consent in exchange for additional options to extend the 1983 lease for two additional 5-year terms.

Under the terms of the 1983 lease, J.C. Penney's current rent is significantly less than the market value for its leased space. WST asserts that further extensions of the current lease terms would be economically untenable for it. WST further asserts that J.C. Penney is withholding its consent to the new construction for the

2

sole purpose of using its leverage to extract additional favorable extensions of the 1983 lease, and that J.C. Penney does not have any legitimate business reason for opposing the new construction.

WST seeks a declaratory judgment interpreting the 1983 lease term that gives J.C. Penney the authority to withhold consent to new construction to include an implied term that such consent may not be unreasonably withheld, which means, according to WST, that J.C. Penney may not withhold its consent for no reason, for a pretextual reason, or for the purpose of extracting an economically unjustified extension of the lease. WST also seeks injunctive relief to prevent J.C. Penney from withholding approval of the specific construction project described in the Complaint.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks and alterations omitted). The court should accept all well-pleaded facts as true, while ignoring conclusory legal allegations. *Id.* All reasonable inferences should be drawn in favor of the non-moving party. *Id.* at 16. The complaint must contain facts that support a reasonable inference "that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Determining the plausibility of a claim is a context-specific task that requires the court "to draw on its judicial experience and common sense." *Saldivar*, 818 F.3d at 18 (quoting *Iqbal*, 556 U.S. at 679) (quotation marks omitted). The

3

burden of demonstrating that the complaint does not state a claim for which relief can be granted is on the Defendant. *See* 5B Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 1357 (3d ed. 2017 Update).

### III.  DISCUSSION

WST asserts that the lease must be regarded as containing an implied covenant of "good faith and fair dealing for all commercial engagements including commercial real estate leases." ECF No. 12 at 13. WST seeks an equitable determination that J.C. Penney's refusal to consent to the new construction violates the terms of the lease when the lease is read in the context of that implied covenant. J.C. Penney counters that treating the lease as including an implied covenant is foreclosed by clear precedent from Maine's Law Court.

**A.  Implied Covenant of Good Faith and Fair Dealing**

Maine's Law Court has on numerous occasions addressed the question of whether Maine law recognizes an implied covenant of good faith and fair dealing in contracts not governed by the Uniform Commercial Code and its answer has consistently been "no." *See, e.g., Niedojadlo v. Cent. Maine Moving & Storage Co.*, 1998 ME 199, ¶ 10, 715 A.2d 934 ("We have had the opportunity to extend the implied covenant of objective good faith in contracts not governed by Maine's U.C.C. and we have specifically refused to do so."); *Camden Nat. Bank v. Crest Const., Inc.*, 2008 ME 113, ¶ 18, 952 A.2d 213 ("There is no duty of good faith and fair dealing when a transaction of this nature is not governed by the U.C.C."); *Haines v. Great N. Paper, Inc.*, 2002 ME 157, ¶ 15, 808 A.2d 1246 ("We have declined to impose a duty of good

4

faith and fair dealing except in circumstances governed by specific provisions of the Uniform Commercial Code."). Judges in this District have ruled accordingly. As Judge Carter explained in *People's Heritage Sav. Bank v. Recoll Mgmt., Inc.*:

> [T]he Maine Law Court intends, at least for the nonce, not to create such an implied duty and to recognize only that duty created by the legislature in the Maine U.C.C. and not to extend it beyond the scope it is given in the express terms of the Code. . . . Accordingly, this Court will no longer recognize, in the absence of a clear holding to the contrary by the Maine Law Court, in its future application of Maine substantive law, existence of any implied duty to perform contractual obligations in good faith and with fair dealing outside of the context of the express terms of the Maine U.C.C.

814 F. Supp. 159, 169 (D. Me. 1993); *see also Gomes v. Univ. of Maine Sys.*, 304 F. Supp. 2d 117, 131 (D. Me. 2004) (citing *People's Heritage* and holding that a claim for breach of implied covenant is not cognizable under Maine law).

WST argues that there is some "confusion" regarding the Maine Law Court's jurisprudence on this question. ECF No. 12 at 8. It asserts that the line of precedent holding that there is no general duty of good faith and fair dealing under Maine contract law began with a faulty interpretation of the Maine Law Court's decision in *Diversified Foods, Inc. v. First National Bank*, 605 A.2d 609 (Me. 1992). While that decision has been cited for the proposition that Maine law does not recognize an implied covenant of good faith and fair dealing, WST contends that the court did not intend to alter the accepted background presumption of good faith and reasonableness in contract interpretation, which has venerable roots in Maine's jurisprudence stretching back to the 19th century and beyond. WST thus contends that the Maine Law Court has subsequently misapplied *Diversified Foods*. WST therefore argues that this Court should exercise its equitable powers to interpret the

5

lease against that background presumption of good faith and reasonableness and find that J.C. Penney's refusal to consent to the new construction is unreasonable.

As a federal court exercising diversity jurisdiction, I am bound to apply the substantive law of Maine as it is defined by the Maine Law Court, not as it would have been defined by the Maine Law Court if it had construed *Diversified Foods* differently in its subsequent decisions. *See Nolan v. CN8*, 656 F.3d 71, 76 (1st Cir. 2011) (noting that courts are "limited, to the extent possible, to applying state law as it currently exists"). Faced with repeated and unambiguous holdings from Maine's highest court that there is no implied covenant of good faith and fair dealing in Maine contract law outside of the Uniform Commercial Code, I must apply that rule to this case. Because Maine law does not recognize the implied covenant in connection with commercial real estate leases, J.C. Penney is not subject to an implied reasonableness or good faith requirement in its exercise of its contractual rights under the lease. WST's Complaint therefore fails to state a claim upon which relief may be granted.

**B.    Certification to Law Court**

WST requests, in the alternative, that I certify a question of law to the Maine Supreme Judicial Court under 4 M.R.S.A. § 57 (2017), seeking clarification about the extent of an implied covenant of good faith and fair dealing in Maine contract law.

Maine's certification statute provides:

When it appears to the . . . district court of the United States, that there is involved in any proceeding before it one or more questions of law of this State, which may be determinative of the cause, and there are no clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may certify any such questions of law of this

> State to the Supreme Judicial Court for instructions concerning such questions of state law.

4 M.R.S.A. § 57 (2017).

Certification is not appropriate in this case because there are clear, controlling precedents that directly address the question WST would have me certify: as described above, the Maine Law Court has clearly held that Maine does not recognize an implied covenant of good faith and fair dealing outside of the Uniform Commercial Code.

WST suggests that my failure to certify a question to the Maine Law Court may run afoul of the principles underlying the Supreme Court's decision in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). WST reasons as follows: this case was originally brought in Maine state court, and the case is only before this Court because J.C. Penney exercised its right of removal under 28 U.S.C.A. § 1441 (2017). *See* ECF No. 1. If the case had remained in state court, WST would have been able to appeal an adverse decision to the Maine Law Court, thereby obtaining an opportunity to have that court clarify—or change—its position on the implied covenant of good faith and fair dealing in Maine contract law. Because *Erie*—according to WST—stands for the principle that the outcome of litigation in a federal diversity case should be substantially the same as if that case had been tried in state court, WST argues that *Erie*'s principles will be violated if it is deprived of its chance to make its argument before the Law Court by operation of the federal removal statute.

*Erie* does not sweep as broadly as WST contends. *Erie* stands for the proposition that *substantive* state laws should be applied by a federal court exercising

7

diversity jurisdiction. 304 U.S. at 78 ("There is no federal general common law. Congress has no power to declare *substantive* rules of common law applicable in a state.") (emphasis added); *see also Alejandro-Ortiz v. P.R. Elec. Power Auth.*, 756 F.3d 23, 26 (1st Cir. 2014) (noting that in a diversity action, courts "must apply state substantive law and federal rules for procedural matters"). The rule establishing the opportunity to seek appellate review in the Maine Law Court is a procedural rule, not a substantive one. *See* M.R. App. P. 2. *Erie* principles are not implicated by my decision not to certify a question to the Maine Law Court in this case.

## IV. CONCLUSION

For the foregoing reasons, J.C. Penney's motion to dismiss (ECF No. 11) is **GRANTED**.

**SO ORDERED.**

**Dated this 4th day of August 2017**

                                                  /s/ JON D. LEVY
                                            **U.S. DISTRICT JUDGE**